## Myers v. Croft.

This action, brought in the United-States Circuit Court for Nebraska, was an ejectment, upon the trial of which it appeared that one Frailey pre-empted the land, and conveyed it to the Sulphur-Springs Land Company before the patent issued. After the patent issued, Frailey conveyed the land to the plaintiff. The case is reported in 13 *Wallace*, 291. It was argued by *H. Cobb* and *L. Douglas*, for Myers; *Redick & Briggs*, for Croft.

Mr. Justice DAVIS delivered the opinion of the Court.

In relation to the first objection, — that the Sulphur-Springs Land Company was not a competent grantee to receive the title, — it is sufficient to say, in the absence of any proof whatever on the subject, that it will be presumed the Land Company was capable in law to take a conveyance of real estate. Besides, neither Frailey, who made the deed, nor Myers, who claims under him, is in a position to question the capacity of the company to take the title after it has paid to Frailey full value for the property. *Smith v. Sheeley*, 12 *Wallace*, 538.

The other objection is of a more serious character, and depends for its solution upon the construction to be given the last clause of the twelfth section of the Act of Congress of Sept. 4, 1841. The act itself is one of a series of pre-emption laws, conferring upon the actual settler upon a quarter-section of public land the privilege (enjoyed by no one else) of purchasing it on complying with certain prescribed conditions. It had been the well-defined policy of Congress, in passing these laws, not to allow their benefit to inure to the profit of land speculators; but this wise policy was often defeated. Experience had proved that designing persons, being unable to puchase valuable lands, on account of their withdrawal from sale, would procure middle-men to occupy them temporarily, with indifferent improvements,

MYERS *v.* CROFT.

under an agreement to convey them so soon as they were entered by virtue of their pre-emption rights. When this was done, and the speculation accomplished, the lands were abandoned.

This was felt to be a serious evil; and Congress, in the law under consideration, undertook to remedy it, by requiring the applicant for a pre-emption, before he was allowed to enter the land on which he had settled, to swear that he had not contracted it away, nor settled upon it to sell it on speculation, but in good faith, to appropriate it to his own use. In case of false swearing, the pre-emptor was subject to a prosecution for perjury, and forfeited the money he had paid for the land; and any grant or conveyance made by him *before* the entry was declared null and void, with an exception in favor of *bona-fide* purchasers for a valuable consideration. It is contended by the plaintiff in error that Congress went farther in this direction, and imposed also a restriction upon the power of alienation *after* the entry; and the last clause in the twelfth section of the act is cited to support the position.

This section, after prescribing the manner in which the proof of settlement and improvement shall be made before the land is entered, has this proviso : "And all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void."

The inquiry is, What did the legislature intend by this prohibition ? Did it mean to disqualify the pre-emptor who had entered the land from selling it at all until he obtained his patent ? or did the disability extend only to the assignment of the pre-emption right ? Looking at the language employed, as well as the policy of Congress on the subject, it would seem that the interdiction was intended to apply to the right secured by the act, and did not go farther : this was the right to pre-empt a quarter-section of land, by settling upon and improving it, at the minimum price, no matter what its value might be when the time limited for perfecting the pre-emption expired. This right was valuable, and, independently of the legislation of Congress, assignable. *Thredgill* v. *Pintard,* 12

## MYERS *v.* CROFT.

*Howard*, 24. The object of Congress was attained when the pre-emptor went with clean hands to the land-office, and proved up his right, and paid the government for his land. Restriction upon the power of alienation after this would injure the pre-emptor, and could serve no important purpose of public policy. It is well known that patents do not issue, in the usual course of business, in the General Land-Office, until several years after the certificate of entry is given; and equally well known that nearly all the valuable lands in the new States admitted since 1841 have been taken up under the pre-emption laws, and the right to sell them freely exercised after the claim was proved up, the land paid for, and the certificate of entry received. In view of these facts, we cannot suppose, in the absence of an express declaration to that effect, that Congress intended to tie up these lands in the hands of the original owners until the government should choose to issue the patent.

If it had been the purpose of Congress to attain the object contended for, it would have declared the lands themselves unalienable until the patent was granted. Instead of this, the legislation was directed against the assignment or transfer of the right secured by the act, which was the right of pre-emption, leaving the pre-emptor free to sell his land after the entry, if at that time he was in good faith the owner of the land, and had done nothing inconsistent with the provisions of the law on the subject.